MORRIS SKILKEN & CO., PLAINTIFF-APPELLANT, *v.* WATKINS FURNITURE COMPANY, DEFENDANT-APPELLEE.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23440. Decided July 20, 1961.

*Mr. Bert L. Wolstein,* for plaintiff-appellant.
*Messrs. Ulmer, Berne, Laronge, Glickman & Curtis, Mr. Marvin L. Karp,* of counsel, for defendant-appellee.

KOVACHY, P. J.   This is an appeal on questions of law from a judgment for the defendant in the Cleveland Municipal Court.

The plaintiff is engaged in the construction business throughout the United States.

Defendant sells furniture retail in seven stores that are located in Northeastern Ohio.

Plaintiff was employed as general contractor by the North Park Shoppers Mart, Inc. to build a shopping center building. Defendant entered into a written lease with the North Park Shoppers Mart, Inc. for a retail store salesroom. The lease provided, inter alia, that the plans and specifications for lessee's store room be approved in writing by lessor and lessee; that the store front correspond to plans and specifications of similar store rooms leased by lessee in other shopping centers; that the decorating be of certain specified materials; that partitions and doors be in accordance with plans and specifications furnished by lessee; that the floor be covered with 3/16" asphalt tile "B," lessee to select color and pattern; that lessor install a heating and air conditioning unit supplied by lessee with credit arrangements on rent; that lessor furnish all utilities, outlets and electric facilities at the direction of lessee; that lessor install a truck dock as specified by lessee; that specifications are not exclusive but subject to change.

Representatives of plaintiff, defendant and lessor met on several occasions to determine the requirements and changes desired by the lessee. At one of these meetings, the lessee's architect submitted drawings "in accordance with the agreed tenant's requirements." It became necessary to change, add and omit, certain plans and specifications set forth in the original lease to meet lessee's desires and requirements. A document drawn up at the first meeting by plaintiff's representative stated "It was agreed that considering all of the additions and *deletions* that were involved, the payment of $850.00 to M. S. & Co. would cover the work as follows, not including tenant (sic) additions or *alterations* on the interior, such as Visual Screens, Displays, Office Changes, Etc." (Emphasis supplied.) The work chart with respect to the additional work decided upon at this meeting was prepared by plaintiff's representative on an invoice of defendant and headed with this language "To Great Northern Shoppers Mart." The invoices sent defendant by plaintiff carried the headnote "Our Job No. 1055 Great Northern Shopping Center."

At one of these meetings, the lessee presented drawings showing that only part of the flooring of its salesroom required covering with 3/16″ asphalt tile for the reason that lessee had decided to cover part of the floor with carpeting (the original plans and specifications called for full coverage of the floor). The square footage of asphalt tile not needed was furnished plaintiff.

Defendant testified without contradiction that the lessor turned the execution of the part of the lease dealing with the plans and specifications for the salesroom over to the plaintiff with express instructions to build the same to defendant's specifications; that substantial changes from the original plans and specifications in the lease were agreed to be made by the plaintiff; that defendant on six previous occasions involving leased space in a building to be constructed arranged directly with the general contractor for extra work to be done and changes to be made in the original plans and specifications; that in each instance payments for the extra work and *credits* for changes requiring less work than the original plans called for were matters taken up with the general contractor; and that the plaintiff understood that it was to assume all obligations under the lease and to adjust charges and *credits* for additional work and changes in relation to the original plan and specifications of the lease.

The plaintiff admitted in its testimony that a dispute over the amount due from the defendant was in existence for a period of about five months before a check was furnished it by the defendant.

On January 19, 1959, defendant sent plaintiff a letter in which it expressed a desire to wind up the matter of the extra charges, estimated the credit due it with reference to the asphalt tile and suggested that the plaintiff either issue it a check for the credit claimed or a credit memo to be used to offset rent. Plaintiff answered this letter on February 5, 1959. It totalled the additional work authorized by lessee at $1640.63 and declared it would be unnecessary to recalculate the construction requirements of defendant's store room because "this subject was thoroughly explored by Mr. C. F. Thompson and yourself on several occasions pertinent to charges and *credits* for additional work and changes * * * *Total payment* for said installa-

tion (asphalt tile covering) is our responsibility to the Gellin Company." (Emphasis supplied.)

A dispute over this credit demand continued for some months. Finally, on May 6, 1959, defendant sent plaintiff a check in the amount of $679.79 with the endorsement "In full to date." The covering letter stated "* * * payment in full according to our calculations." Plaintiff, without notice to defendant, endorsed the check, "Accepted as partial payment of acc't. to date" and cashed it.

This lawsuit was then filed by the plaintiff alleging a balance of $963.84 due it from defendant. The trial court held that an accord and satisfaction had taken place between the parties and plaintiff had nothing due it from the defendant.

* * *

Plaintiff appellant's basic assignment of error is:

"The judgment of the Trial Court is contrary to law and the evidence."

Plaintiff appellant contends that its claim for extra work performed by it at the instance of the defendant was liquidated and undisputed; that the demand of the defendant for credit from it for unused asphalt tile was unjustified and consequently not bona fide and honest; that the contract for the construction of the building was between it and the North Park Shoppers Mart, Inc., the lessor, and not the lessee, and no privity of contract existed between it and the defendant, the lessee; and that the acceptance of the check, sent it by the defendant, as part payment only on a liquidated and undisputed account, was not an accord and satisfaction.

Defendant appellee, on the other hand, maintains that a bona fide and honest dispute existed between it and the plaintiff with respect to this credit and that when the plaintiff cashed the check it had sent, an accord and satisfaction was had and the dispute terminated.

The law in Ohio is well settled that where a debtor, in a bona fide dispute over an unliquidated demand, tenders the creditor an amount less than the amount in dispute, under the express condition that it shall be in full of the disputed claim, the creditor has the alternative of accepting the amount tendered upon the terms of the contract or rejecting it entirely.

If the tender is by check, he must return it. *Seeds Grain & Hay Company* v. *Conger*, 83 Ohio St., 169, 93 N. E., 892.

The Supreme Court, in a more recent case, stated the law in the syllabus of *Platt* v. *Penetryn System*, 151 Ohio St., 451, 86 N. E. 2d, 600, as follows:

"The acceptance and cashing by a creditor of a check delivered by his debtor, with full knowledge of the condition that the check is inscribed 'Payment in full all compensation due,' in settlement of an unliquidated and contested claim of the creditor, constitute an accord and satisfaction."

In view of the law, therefore, it necessarily follows that the main question in the trial of this lawsuit was the question whether there existed a bona fide and honest dispute between the parties with respect to the proper amount of money due the plaintiff from the defendant in connection with the construction of the salesroom leased to the defendant and built in accordance with plans and specifications approved by the defendant.

The parties were in agreement that the total cost for the extra work performed for the defendant amounted to $1640.63. This amount, unquestionably, would be considered liquidated were it not for the claim of the defendant for a credit on the unneeded asphalt tile.

It is stated in 1 Amer. Jur. 250, Sec. 63:

"A dispute as to the right to a set-off or counterclaim against an otherwise undisputed claim has properly been held to render the claim as a whole a disputed claim, as the claim should be treated as a single one, consisting of the undisputed part and the set-off or counterclaim."

1 C. J. S. 515, states the following:

"In order to support an accord and satisfaction by part payment, it is not necessary that a dispute or denial be well founded, or that either party be right in his contentions, but it is essential that it be bona fide and honestly believed in."

The question, therefore, becomes: Does the record disclose evidence of a substantial nature tending to prove that the claim for credit made by the defendant was "bona fide and honestly believed in?" We believe the record so shows.

Where a contractor for a lessor is permitted to charge a lessee directly for changes that require extra labor from that originally specified in a lease under arrangements with the

parties concerned that *all* matters with respect to additions and changes in such original plans and specifications be cleared with the contractor, it would seem that a claim for credit on the part of the lessee for work that did not have to be performed by the contractor because of such additions and changes, was bona fide and honestly believed in.

The question whether the dispute was bona fide and honest was for the trier of the facts.

*Indianapolis* v. *Domhoff & Joyce Co.*, 69 Ohio App., 109, 36 N. E. 2d, 153, affirmed by the Supreme Court in 140 Ohio St., 64, 42 N. E. 2d, 445, paragraph three of the syllabus reads:

"3. Held: whether there was a bona fide dispute was an issue of fact to be decided by the jury."

*Yin* v. *Products Co.*, 141 Ohio St., 21, 46 N. E. 2d, 610, paragraph three of the syllabus reads:

"3. When in such a case the jury finds from conflicting evidence that plaintiff's demand is liquidated and there is a conflict in the evidence as to whether there was a bona fide dispute between the parties at the time of the acceptance of the less amount in full settlement, the jury must go further and determine whether such a bona fide dispute then existed and upon a determination of that issue in favor of the defendant, the defense of accord and satisfaction is made out."

The record discloses ample evidence of a substantial nature to support a finding that the defendant honestly believed a credit was due it on the account submitted by the plaintiff for extra work and that a bona fide dispute existed with respect to such credit claim.

We accordingly overrule appellant's assignment of error and affirm the judgment of the trial court.

*Wellnitz* v. *Dependabilt Homes, Inc.*, 48 Ohio Law Abs., 371, 74 N. E. 2d, 776.

*Kiser* v. *Wilberforce University*, 33 Ohio Law Abs., 438, 35 N. E. 2d, 771.

*Toledo Edison Co.* v. *Roberts,* 50 Ohio App., 74, 197 N. E., 500.

1 Ohio Jurisprudence 2d, 155, Section 15.

Judgment affirmed. Exceptions noted.

HURD, J., concurs.
SKEEL, J., dissents.

214

Skeel, J., dissenting. The principal facts are not in dispute. Watkins contracted with the plaintiff to do certain work in its new store room in the Great Northern Shopping Center. The contract price for the work was $1640.63. The work was done and the contract price was, therefore, due the plaintiff. By the defendant's lease of a store room with the North Park Shoppers Mart, Inc., it was agreed between them, the Shopping Mart and this defendant, that certain asphalt floor covering would be installed as a part of the lessor's obligation in constructing the store room for defendant's use. Through a subsequent arrangement with the Shopping Mart, a certain part of the flooring was not installed at the request of the defendant lessee. On January 19, 1959, the defendant addressed a letter to the plaintiff, a part of which provided:

"According to our lease, we were allowed 16,000 square feet of B Grade asphalt 3/16 inch thick. I'm estimating that this would have cost you approximately $3230. In as much as the tile which we used totalled approximately $1800, I figured we have a credit due us of a little more than $1400. Against this, are two charges of $850.00 and $93.85, leaving us something less than $500.00 credit."

The plaintiff was the general contractor engaged by the North Park Shoppers Mart, Inc. to build the shopping center which included the store room to be occupied by defendant as described in defendant's lease. Whether the defendant would be entitled to a credit on its contract (lease) with the shopping mart for tile flooring not installed because of Watkins' changed specifications would be of no concern to the contractors nor is there any evidence in the record that there was any obligation on the part of the contractor to pay, out of his funds, any claimed credit that might be due Watkins from the shopping mart for work which was to be furnished under the lease but which the lessee desired omitted. It would be difficult to establish any obligation on the part of a lessor to pay the lessee the value of work not to be done in preparing a store room for occupancy at lessee's request, but that question is not before us.

The record discloses the following testimony given by the secretary of the defendant:

"Q. You never entered into a contract to install asphalt tile floor in your store room?

"A. With Morris Skilken & Co.?  No.

"Q. With whom did you enter into a contract to install an asphalt tile floor?

"* * *

"A. Saul Shore and Saul Biskin.

"Q. Who is Saul Biskin?

"A. The owner of the Shopping Center."

The plaintiff, in answering the defendant's letter of January 19, 1959, the answer being dated February 5, 1959, sets out the full amount of the work contracted for by Watkins.  The amount is $1640.63.  The letter states, in part:

"The floor covering installed therein is in accordance with the terms of our contract and the materials and quantities were chosen by you, to your satisfaction.  Total payment for said installation is our responsibility to the Gellin Company.

"Any additional charge that you may have with Ebert is a matter between yourselves.  We sincerely hope that this letter has clarified the situation for you.  May we have your check for $1640.63 at the earliest convenient time."

With regard to the defendant's conduct after receiving this letter, the defendant's secretary testified:

"Q. When Mr. Kehr denied your assertion of credit, did you do anything thereafter, Mr. Silver?

"A. Well, we discussed the matter with our attorney and wanted to know how to handle it because we felt we were entitled to a credit according to our lease. * * *"

There was no contractual relation between the plaintiff and defendant for the laying of the tile floor.  The defendant's secretary testified:

"At the time we sought—When he (Biskin) discussed all of these changes made to our specification, we said 'we will give you a floor plan showing where to put the tile,' and the floor plan we gave him (Biskin) showed areas to be tiled and certain areas not to be tiled, and they followed the floor plan because we had to put wood strips in the floor to nail carpeting to it.

"Those areas were designated by the wood strips on our blueprints.  I am sorry I didn't bring them, but this shows the various areas to be covered with tile and the various areas to be left uncovered after we got through with the construction

—because we have done this in six or seven different stores and they figured out how many square feet we had and we went to the landlord and in all cases we got the credits on unused portion which was agreed upon—not in writing but in talking with Saul Biskin.

"After that, he didn't build the building. He turned it to the contractors and they executed the parts of the lease. We could have requested that they cover the entire floor with tile as the lease called for and then cover it with carpet right on top, which would have been wasteful. That is the reason for our contention that we have a credit coming."

The lease provided:

"Storeroom floor to be furnished with 3/16 inch asphalt tile 'B' lessee to select color and pattern."

There is not even a suggestion that the defendant had any contractual relations with the plaintiff, except for the special work for which the plaintiff now claims a balance of $963.84. The defendant admits that its agreement for floor covering in its store room was with the shopping mart and there was, therefore, no evidence in support of a legal duty on the part of the plaintiff to be responsible for any claim the defendant may have had against the North Park Shoppers Mart, Inc. for not requiring it, the lessor, to install all of the tile floor called for by their lease agreement. There was no relationship between the plaintiff and defendant that could possibly be the subject of a legal controversy. This being so, there is no basis for a legitimate dispute upon which a notation on a check "paid in full" would justify a claim of "an accord and satisfaction" which is the only defense in this case. There must be at least an apparent legal right to the credit contended for in favor of the defendant against the party seeking full recovery of a debt to support a dispute as to the balance due to justify a claim of accord and satisfaction.

The plaintiff is clearly entitled to the balance of its claim. The judgment should be reversed.