KIRK WILLIAMS CO., INC., APPELLANT, *v.* SIX INDUSTRIES, INC., APPELLEE.

(No. 1774—Decided September 8, 1983.)

*Messrs. Murphey, Young & Smith, Mr. Alan L. Briggs* and *Ms. Carole S. Genberg,* for appellant.

*Messrs. Martin, Browne, Hull & Harper* and *Mr. Glenn W. Collier,* for appellee.

BROGAN, P.J. Appellee, Six Industries, Inc., was the general contractor for the construction of the Credit Life Insurance Building in Springfield, Ohio. As general contractor, appellee entered into a subcontract with the appellant, Kirk Williams Company ("Kirk Williams") relating to the heating, ventilating and air-conditioning portion of the project. This subcontract was in excess of $1,100,000.

As is relatively standard on projects of this magnitude, the contractual undertaking between the parties was changed by formal written change orders on several occasions. These changes represented both additions as well as deletions from the subcontract with Kirk Williams. Not all of these changes, however, were signed or agreed to by Kirk Williams.

The project admittedly was not completed on the original scheduled completion date. The reasons for this delay, whether appellant had advance knowledge of such delay and the propriety of damages for any delay, were not before the trial court and are not at issue here. It is relevant, however, that the appellant did claim substantial delay damages against Six Industries.

As the project neared completion, Six Industries submitted two last change orders to Kirk Williams for approval. The last of these change orders contained a statement that:

"This change order completes and settles all disputed items between Kirk Williams Company, Inc. and Six Industries, Inc. on this project."

Paul Wright, manager of the appellant's industrial division, called Thomas Cooke, Vice President of Six Industries, and informed him that he could not sign and complete the change order because Kirk Williams had a delay claim in process and it would be forthcoming.

Subsequent to these discussions, Six Industries, under date of November 10, 1981, issued a check payable to Kirk Williams in the amount of $14,850.04. On the reverse side of this check, the following language appeared:

"Endorsement and/or negotiation of this check constitutes a full and complete release of Six Industries, Inc. and acknowledges full payment of all monies due or to become due for any and all work done or materials furnished by the Payee in connection with the Credit Life Insurance project in Springfield, Ohio."

In addition, the top half or voucher of

this check contained the following language:

"Payment in full — $164 The Credit Life Insurance Company, Springfield, Ohio — per restrictive endorsements."

The above-referenced check was received by appellant in the normal course of its business and the check was deposited by its bookkeeper, who believed the restrictive endorsement had no legal significance. On or about November 20, after this check had cleared the bank, appellant attempted to negate the clear restriction on the check by issuing its own check payable to Six Industries for $14,850.04. The check of Kirk Williams was returned by appellee's counsel indicating that the check previously issued by Six Industries and negotiated by Kirk Williams had, in fact, settled and resolved all of the differences between the parties.

Appellant then filed this action in the Court of Common Pleas of Clark County seeking delay damages and also seeking a declaratory judgment that the restrictive endorsement on appellee's check was of no consequence or effect. Appellee answered the complaint raising the defense of accord and satisfaction. By agreement of the parties the declaratory judgment was tried to the court without a jury and the trial court found that all elements of accord and satisfaction were present and judgment was awarded to appellee. The trial court found that under well-settled case law in Ohio the cashing of the check under the circumstances of this case amounted to accord and satisfaction. The court found that Kirk Williams could not avoid the consequences by placing an employee (who appellant claims had no authority to settle such disputes) in the position of cashing all checks tendered to the appellant through such employee irrespective of the language contained on such checks. From the judgment, appellant timely appeals asserting two assignments of error:

"I. The trial court erred when it failed to grant plaintiff's requested declaratory judgment. Such declaratory judgment should have held that the deposit of defendant's check by plaintiff's bookkeeping clerk does not constitute an accord and satisfaction, a compromise, a settlement or a release of plaintiff's claims against defendant.

"II. The trial court erred when it concluded that a bookkeeping employee of a corporation who is not authorized to settle a disputed claim subjects the corporation to an accord and satisfaction by depositing a check bearing a restrictive endorsement, under circumstances where persons in the corporation with the authority to settle and resolve disputes were not aware of the receipt of the check until after its deposit, and the corporation promptly returns the amount of the check and rejects any settlement."

An accord and satisfaction is a method of discharging a contract or settling a cause of action arising either from a contract or tort, by substituting for such contract or cause of action an agreement for the satisfaction thereof an execution of such substituted agreement. *Chillicothe Hospital* v. *Garrett* (1971), 26 Ohio App. 2d 277 [55 O.O.2d 425]. Compromise and settlement is closely related to accord and satisfaction; however, performance is necessary to a complete accord and satisfaction, while it is not essential to a valid compromise. 1 American Jurisprudence 2d (1962) 303, Accord and Satisfaction, Section 2.

"An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty." Restatement of the Law, Contracts 2d (1981) 381-382, Section 281(1).

An accord and satisfaction is the result of an agreement between the parties, and this agreement, like all others, must be consummated by a meeting of the minds of the parties. *Warner Elevator Mfg. Co.* v. *Higbee* (1935), 53 Ohio App. 546 [7 O.O. 355]. An effective assent can-

not be given and a meeting of the minds cannot be achieved unless the parties have knowledge of the facts which are material to the agreement. But an agreement intended as an accord and satisfaction of certain claims may be valid as to those claims known to both parties at the time of the execution, notwithstanding that an additional claim was discovered after an accord had been made and executed by satisfaction. *Brient* v. *Cupid Ice Cream Co.* (1933), 47 Ohio App. 283.

As in the case of the other contracts, when a contract of accord and satisfaction is entered into by an alleged agent on behalf of his principal, in order to bind the principal the agent must have been duly authorized thereto, or his act must have been ratified by the principal. 1 American Jurisprudence 2d, *supra,* Section 8, at 307-308. See, also, *Aerosonic Instrument Corp.* v. *NuTone, Inc.* (C.P. 1958), 80 Ohio Law Abs. 289.

An accord and satisfaction, being a contract, must be supported by a good or valuable consideration in order to be given effect. 1 American Jurisprudence 2d, *supra,* Section 12, at 310. In the case of an unliquidated or disputed demand the consideration rests in part upon the settlement of the dispute. A claim is an "unliquidated demand," as the term is used in connection with an accord and satisfaction, if there is a bona fide dispute as to its existence or amount. *Morris Skilken & Co.* v. *Watkins Furniture Co.* (App. 1961), 18 O.O. 2d 374. It is the general rule that, where the amount claimed to be due is unliquidated, an accord and satisfaction may be had by the acceptance of a lesser sum. *Indianapolis* v. *Domhoff & Joyce Co.* (1941), 69 Ohio App. 109 [23 O.O. 547].

A creditor to whom remittance is made as payment in full of an unliquidated or disputed claim has the option either of accepting it upon the condition on which it was sent or of rejecting it, and if it clearly appears that the remittance was sent upon the condition it be accepted in full satisfaction, then failure to reject it will result in an accord and satisfaction. *Seeds Grain & Hay Co.* v. *Conger* (1910), 83 Ohio St. 169; see, also, *Platt* v. *Penetryn System, Inc.* (1949), 151 Ohio St. 451 [39 O.O. 273].

Since accord and satisfaction is an affirmative defense which must be specially pleaded under Civ. R. 8(C), the burden of proving it rests upon the party who alleges the execution of such agreement and seeks to avail himself of the benefit thereof. *Warner Elevator Mfg. Co.* v. *Higbee, supra.*

The record is clear that Thomas Cooke, appellee's vice president, had been informed that as late as October 10, 1982, the industrial manager of appellant's firm refused to accept a change order which contained a "notation" that the change order settled all disputed items between the parties on the Credit Life Insurance Building project. Nonetheless, someone in appellee's company mailed a check to appellant for $14,850.04 with the restrictive endorsement containing similar language to the change order.

The evidence revealed that Carl Shaffer, a bookkeeper with Kirk Williams, deposited the Six Industries check containing the restrictive endorsement. Shaffer's training was solely that of a bookkeeper. He also opened the daily mail and distributed it to the various departments within the company. He was given a rubber stamp by his employer stating, "make payable to Kirk Williams Company, Deposit," and it was his duty to prepare deposit slips and to make credit entries on the accounts receivable. The deposit slip was then given to a secretary or the controller for deposit in the bank. He had no authority to settle disputes between his company and other contractors.

He stated he placed the rubber stamp endorsement on the check even though he read the restrictive endorsement because he thought it had no legal significance. He gave it to his secretary who deposited it in the bank. There was no evidence that anyone else in appellant's company knew

of the receipt of the check by Shaffer until some ten days later when Paul Wright discovered the check had been deposited. Shaffer denied any knowledge of a delay claim which may have existed between his employer and Six Industries. He admitted his company placed no restrictions on the use of the rubber stamp.

While the evidence revealed that the responsibilities of various corporate personnel were not clearly delineated, it was clear from the evidence that Shaffer's role was essentially that of a clerk-bookkeeper. There was evidence that several others, either as officers of the corporation, project managers or estimator engineers, had authority to settle change orders or disputes with contractors.

"Mere authority given an agent to indorse a check for deposit does not effect an accord and satisfaction based upon the receipt of a check for an amount less than that due where the agent does not have knowledge of any controversy as to the amount of the indebtedness or authority to adjust any such controversy." 1 American Jurisprudence 2d, *supra,* Section 8, at 306-307.

This principle was applied in a case strikingly similar to the instant case, *Eckert-Fair Construction Co.* v. *Capitol Steel & Iron Co.* (C.A. 5, 1949), 178 F. 2d 338, certiorari denied (1950), 339 U.S. 928. The plaintiff (a subcontractor) sued a general contractor for a balance claimed to be due and owing for work and labor performed and materials furnished defendant during the erection of a building. The building was completed in January 1948 and a controversy thereafter arose as to the amount owing for extra materials furnished and work and labor done under the contract. The dispute continued for about six months. Although the parties met through their representatives several times, they failed to reach an agreement as to the balance due.

The defendant then wrote a letter to the plaintiff on July 21, 1948, itemizing the charges and arriving at a final balance of about $20,000. A check was enclosed reciting the words "final payment." The letter was received and the check cashed on July 23, 1948 by plaintiff's auditing department. In August 1948, the plaintiff wrote the defendant that it was not willing to settle the account on the basis of the defendant's calculations. Plaintiff filed suit in November 1948 to recover the balance of the account and extras.

The defendant raised the defense of accord and satisfaction. The case was tried to the court without a jury. The trial court held that there had been no accord and satisfaction and that the plaintiff would not be prohibited from recovering on his claim for damages. In affirming the trial court, the Fifth Circuit enunciated the rationale that in order for there to be a meeting of the minds to effect an accord and satisfaction, the parties who act must be authorized, or there must be an acceptance by way of ratification.

"[I]t was also shown that when the check and letter arrived Mr. Shubert, who had represented the plaintiff in its dealings with defendant throughout the contract, was not present or apprised of their arrival, and that the check *was turned over to the plaintiff's auditing department which handled and deposited same without the knowledge of Shubert.*

"We are of opinion that decision here must turn upon whether the depositing of the check by the auditing department of the plaintiff was such an acceptance as to constitute an accord and satisfaction binding upon it as a sub-contractor. The burden of proof was on the defendant to show (1) that it tendered the amount paid in full satisfaction of the debt, (2) there was an acceptance of the sum tendered; *and (3) that such acceptance was by the plaintiff or one authorized by it to act, or else there was a subsequent ratification by plaintiff of the acts of its agents in the alleged accord and satisfaction, all to the end that it be shown the minds of the parties have met in accordance with recog-*

156

nized contractual principles in effectuating an accord and satisfaction. Thus, the entering into an agreement for an accord and satisfaction is the making of a new and independent contract in which the minds of the parties must meet, the parties who act must be so authorized, or there must be an acceptance by way of ratification. 1 Texas Jurisprudence p. 251; Schulze v. Waco Land & Trust Co., Tex. Civ. App., 177 S.W. 157; 1 C.J.S., Accord and Satisfaction, § 3, p. 468 and p. 471.

"A careful consideration of the entire record evidence in this case leads us unerringly to the conclusion that defendant has failed to discharge its burden of proving an acceptance or ratification by plaintiff sufficient to constitute the alleged accord and satisfaction. After the check was deposited by the auditing department of the plaintiff it is without dispute that upon the return of Mr. Shubert, plaintiff's representative, a letter was written within a reasonable time rejecting the settlement offer, and advising that the amount paid had been credited to defendant's account. Consequently, there is no sufficient proof that the minds of these parties have ever met in effectuating the alleged accord and satisfaction, or that the check was accepted by an agent having authority to enter into such contract on behalf of plaintiff, without which such cannot herein be sustained." (Emphasis added.) Id. at 340.

Other cases holding that an accord and satisfaction does not arise by virtue of an employee or agent's unauthorized cashing of a full settlement check include Jennings v. South Whitley Hoop Co. (1912), 50 Ind. App. 241, 98 N.E. 194; and Standard Rice Co. v. Landers (1926), 171 Ark. 517, 284 S.W. 760.

The entering into an accord and satisfaction is the making of a new and independent contract in which the minds of the parties to the contract must meet, and the parties who act must be so "authorized," or there must be an acceptance by

way of ratification. There was no meeting of minds here. Shaffer's action was ministerial in nature. It was not the result of a conscious decision of the appellant to accept the $14,850.04 in settlement of its delay claim. Appellant sent appellee a check in the amount of $14,850.04 immediately when the mistake was discovered. There was no ratification of the bookkeeper's actions. The assignments of error are well-taken. The judgment of the trial court is reversed and the cause is remanded for a decision consistent with this opinion and for a further determination of the other cause of action rendered previously moot by the trial court's decision.

*Judgment reversed and cause remanded.*

WILSON and WEBER, JJ., concur.