INGER INTERIORS, APPELLEE, *v.* PERALTA ET AL., APPELLANTS.

(No. 50014 — Decided
February 10, 1986.)

*Inger Bednar,* d.b.a. Inger Interiors, for appellee.
*Jean K. Nash,* for appellants.

MARKUS, P.J. The defendant-customers appeal from a judgment granting the plaintiff-decorator's claim for an allegedly unpaid account balance. Contrary to the customers' contention, the trial court reasonably found that the customers had agreed to pay the challenged balance. However, undisputed evidence established that the decorator had accepted the customers' proposed settlement for this controversy. Hence, we reverse the trial court's judgment and enter final judgment dismissing the decorator's claim.

I

The trial court's small claims referee heard the evidence on the plaintiff-decorator's claim and reported these findings to the court:

"In December, 1983, plaintiff met with defendant [*sic*] to discuss the covering of 4 custom pillows, shades, duster & the construction of a quilted bedspread. A letter, dated 12/8/8[3] was sent to defendant [*sic*] confirming the order. On or about January 6, 1984, plaintiff sent a proposal to defendants giving a balance for the job as $1590.00. Plaintiffs [*sic*] testified that this estimate failed to include a price for the 'stitching' of the quilted bedspread as that amount could only be determined by the person doing the stitching and would be calculated on an hourly basis. On or about April 16, 1984, plaintiffs [*sic*] sent a letter to the defendants clarifying their [*sic*] Jan. 6th proposal and stating again that they [*sic*]

could not quote a price on the stitching on the Jan. 6th letter, and could only do so upon completion of the work.

"On May 2, 1984, defendants sent plaintiffs [*sic*] a check for $652.[5]0 and marked 'Paid in Full' both on the front & back of the check. In addition, defendants also sent a letter with the check saying that the check represented 'total payment in full.' The defendant [*sic*] also stated 'I really don't see why you're asking for $1,064.00 more.' Clearly both parties realized that the total amount was in dispute. Plaintiff Charles Bednar [the decorator's representative] testified that he received the letter & the check and that he crossed out the 'paid in full' notations on the check & wrote in 'partial payment.' Defendant [*sic*] now claims that since plaintiff cashed the check — an accord and satisfaction has been set up as a defense to the complaint."

The referee supplied the court with the parties' evidentiary exhibits: the described correspondence, an affidavit from the plaintiff-decorator, and the customers' checks. One check was dated February 4, 1984; it paid $652.50 with the notation "½ dep. labor spread & curtain." Another check was dated May 2, 1984; it paid $652.50 and carried the customers' original notations "Paid in Full" on the face and back, which the decorator struck and replaced with the notations "partial payment." The decorator negotiated and cashed each of the checks within a few days after the date of its issue.

The decorator did not seek recovery for material costs which the customers had paid separately. Further, the decorator agreed that $285 of the original $1,590 quotation for labor represented pillows and shams which the parties later deleted from the sale. Thus, the customers paid a total of $1,305 for labor. The decorator claimed that the customers owed that amount plus "ex-

tra for quilting and sham and freight" ($308) and "sales tax" ($104.84). Thus, the decorator sought an additional $412.

Contrary to its referee's recommendation, the court rejected the customers' contention that the May 2 check settled the decorator's claim. Instead, the court granted the decorator judgment for the alleged $412 balance less $75 "for excess quilting and fabric not returned to defendants." The record contains no evidence to justify that $75 credit, but the decorator does not challenge it here.

## II

In their second assignment of error, the customers argue that the trial court erred by finding that they ever owed the claimed balance. More specifically, they contend that the decorator first asserted these additional charges after the decorator had fully performed the agreement.

The customers failed to provide us with a record of the applicable evidence on this subject, if the trial court received any such evidence. Their assertions in trial and appellate briefs do not constitute evidence. Apparently without objection by the customers, the referee accepted the decorator's affidavit in lieu of testimony at the hearing. That affidavit and the decorator's letters to the customers indicate the decorator's inability to quote a price for the special stitching until it was completed.

The evidence summarized by the referee and the remaining exhibits do not demonstrate whether the quoted price included charges for special stitching. Nothing in those materials denies the customers' obligation for freight or sales taxes. Absent any contrary agreement, the customers presumably undertook to pay for the reasonable value of the decorator's contractual performance. Cf. R.C. 1302.18.

In a non-jury trial, the court weighs the evidence and determines which reasonable inferences to accept. See *State* v. *Walker* (1978), 55 Ohio St. 2d 208, 213, 9 O.O. 3d 152, 155, 378 N.E. 2d 1049, 1052; *State* v. *DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus. An appellate court will not disturb those findings unless they are clearly contrary to the evidence. *State* v. *McKenzie* (July 1, 1982), Cuyahoga App. No. 44167, unreported.

We must presume that the trial court correctly construed the parties' agreement if the record does not clearly show the claimed error. Cf. *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 10 OBR 408, 461 N.E. 2d 1273; *Loga* v. *Strongsville Bd. of Edn.* (Nov. 21, 1985), Cuyahoga App. No. 49776, unreported. This record provides no basis for a reversal of the disputed factual finding about the parties' intentions. Hence, we overrule the second assigned error.

## III

The customers' first assigned error contests the trial court's refusal to dismiss the decorator's claim as settled. This contention has merit.

When the decorator negotiated the customers' check, he accepted the terms specified for its delivery. Unless the customers expressly or impliedly withdrew their stipulation that the check was full payment, the decorator could not retain it without accepting the condition. *Seeds Grain & Hay Co.* v. *Conger* (1910), 83 Ohio St. 169, 93 N.E. 892, paragraph one of the syllabus; *Platt* v. *Penetryn System, Inc.* (1949), 151 Ohio St. 451, 456, 39 O.O. 273, 275, 86 N.E. 2d 600, 602; *Morris Skilken & Co.* v. *Watkins Furniture Co.* (App. 1961), 87 Ohio Law Abs. 208, 212, 18 O.O. 2d 374, 376, 176 N.E. 2d 256, 259; *Trissel* v. *Schill* (Aug. 2, 1973), Cuyahoga App. No. 32222, unreported; *Westview Concrete Corp.* v. *Hudecek Cement Contractors, Inc.* (Aug. 6, 1981), Cuyahoga App. No. 43072, unreported. The decorator's unauthorized unilateral modification of the customers' express condition did not change the effect of his acceptance of their payment.

The customers unquestionably stipulated that their May check constituted full and final payment for any obligation they had to the decorator. The parties then had a bona fide dispute about the amount of any remaining debt. Consequently, the decorator's acceptance of the payment with that stated condition represented an accord and satisfaction which terminated his right to any further payment. Cf. *Kirk Williams Co.* v. *Six Industries, Inc.* (1983), 11 Ohio App. 3d 152, 153, 11 OBR 233, 235, 463 N.E. 2d 1266, 1269; *Chillicothe Hospital* v. *Garrett* (1971), 26 Ohio App. 2d 277, 279, 55 O.O. 2d 425, 426, 271 N.E. 2d 313, 314-315. Therefore, the decorator's claim was barred as a matter of law.

We sustain the first assignment of error. Accordingly, we reverse the trial court's judgment and enter final judgment dismissing the plaintiff-decorator's claims against the defendant-customers.

*Judgment reversed.*

ANN MCMANAMON, J., concurs.

PATTON, J., dissents.

PATTON, J. I must respectfully dissent from the position reached by the majority in the first assignment of error. It is my considered opinion that since the creditor conditionally endorsed the check, he effected an explicit reservation of his rights and was therefore not subjected to accord and satisfaction. In *Westview Concrete Corp.* v. *Hudecek Cement Contractors, Inc., supra,* I expressed this same opinion in my dissent which is incorporated herein:

"* * * In 1910, the Supreme Court of Ohio in *Seeds Grain & Hay Co.* v. *Conger* (1910), 83 Ohio St. 169, set forth the general rule that where there is a dispute over an unliquidated debt and the debtor tenders an amount less than the amount in dispute upon the express condition that it shall be in full payment, the creditor must either accept the amount tendered as payment in full or return the check. Sixteen years later, this court of appeals in *[J.P.] Burton Coal Co.* v. *[John P.] Gorman Coal Co.* (1926), 22 Ohio App. 383 reached the opposite conclusion in a fact situation virtually indistinguishable from *Seeds Grain & Hay Co. Burton Coal Co.* was appealed to the Ohio Supreme Court which denied a motion to certify on May 2[5], 1926. It is difficult to rationalize *Burton Coal Co.* with *Seeds Grain & Hay Co.,* particularly in light of the fact *Burton Coal Co.* makes no mention of *Seeds Grain & Hay Co.*

"Since this court's decision in *Burton Coal Co.,* the issue at bar has been before the Ohio Supreme Court only once. In 1949, the court in *Platt* v. *Penetryn System, Inc.* (1949), 151 Ohio St. 451, reaffirmed its position in *Seeds Grain & Hay Co.* The various courts of appeals in Ohio have followed *Seeds Grain & Hay Co.* and have either made no mention of *Burton Coal Co.* or have attempted to distinguish it. The most recent of these cases reported is *Morris Skilken & Co.* v. *Watkins Furniture Co.* (1961), 87 Ohio L[aw] Abs. 208.

"However, in 1962, one year after the *Morris Skilken & Co.* decision, Ohio adopted Section 1-207 of the Uniform Commercial Code (R.C. 1301.13). That section provides:

" [']*A party who with explicit reservation of rights performs* or promises performance or assents to performance *in a manner* demanded or *offered by the other party does not* thereby *prejudice the rights reserved.* Such words as "without prejudice," "under protest," or the like are sufficient.['] (Emphasis added.)

"Although no Ohio courts have applied this section to the situation in the instant case, other jurisdictions have. [Citations omitted.] In *Scholl* v. *Tallman* (S.D. 1976), 247 N.W. 2d 490, the

Supreme Court of South Dakota found that Section 1-207 of the Uniform Commercial Code applied to a situation where a creditor, under protest, deposited a check marked 'Settlement in Full * * *' that he had received on an unliquidated debt. The court held that because the creditor conditionally endorsed the check, he had effected an 'explicit reservation of [his] rights' under Section 1-207 and thereby did not jeopardize his rights to the balance he maintained was due. *Scholl* has been followed in *Miller* v. *Jung* (Fla. App. 1978), 361 S[o]. 2d 788; and in *Kroulee Corporation* v. *A. Klein & Company, Inc.* (1980), 103 Misc. 2d 441, 426 N.Y.S[upp.] 2d 206.

"I find *Scholl's* interpretation of Section 1-207 to be a salutary one. Were *Scholl* adopted in this state, a creditor would no longer be at the mercy of the debtor facing the dilemma of either accepting the lesser amount as full settlement or returning the check and gambling his chances of collecting anything. Instead, the risk of loss would be upon the debtor who, after having received protest from the creditor, could stop payment on the check. Even if it were too late for the debtor to stop payment, he would still have the opportunity to protest the remainder the creditor claimed to be due on the debt.* * *" (Footnotes omitted.)

Accordingly, appellants' first assignment of error has no merit.

Judgment should be affirmed.