HEARST CORPORATION, APPELLANT, *v.* LAUERER, MARKIN & GIBBS, INC., APPELLEE.

(No. L-87-085—Decided October 30, 1987.)

*Lawrence Gibson,* for appellant.
*Jack G. Fynes* and *Sandra J. Polin,* for appellee.

RESNICK, J. This cause is before the court on appeal from a judgment of the Lucas County Court of Common Pleas wherein that court rendered summary judgment in favor of Lauerer, Markin & Gibbs, Inc., defendant-appellee. The Hearst Corporation, plaintiff-appellant, filed a timely notice of appeal and asserts the following assignments of error:

"I. The trial court erred in finding that a check tendered with a restrictive endorsement by defendant-appellee and accepted with a reservation of rights by plaintiff-appellant constituted an accord and satisfaction between the parties.

"II. The trial court erred in granting defendant-appellee's motion for summary judgment since there existed genuine issues of material fact and defendant was not entitled to judgment as a matter of law."

Appellant and appellee entered into an oral contract, the subject of which was that appellant was to create and publish a promotional insert for appellee. The services were rendered and appellant submitted invoices totaling $90,040.50. However, a genuine

dispute arose over the amount due for those services because of a problem in the location of the advertisement within the publication. Appellee tendered a check in the amount of $55,040.50 which contained on the back a restriction which read: "DEPOSIT CONSTITUTES ACCEPTANCE AS PAYMENT IN FULL FOR ALL CLAIMS AGAINST LAUERER MARKIN & GIBBS, INC." Appellant, upon receiving the check, added the language "UNDER PROTEST, ALL RIGHTS RESERVED" directly under appellee's restriction, endorsed the check, and then negotiated it.

Appellant's second assignment of error contends that summary judgment was inappropriate in that reasonable minds can come to differing conclusions based upon conflicts created by the application of R.C. 1301.13; *Duhart* v. *Franklin Park Lincoln-Mercury* (July 1, 1983), Lucas App. No. L-83-027, unreported; and *Inger Interiors* v. *Peralta* (1986), 30 Ohio App. 3d 94, 30 OBR 193, 506 N.E. 2d 1199.

Summary judgment is governed by Civ. R. 56(C) which provides, in pertinent part:

"* * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judg-

ment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"

A trial court must determine three things before summary judgment can be granted: first, that there is no genuine issue as to any material fact; second, that the moving party is entitled to judgment as a matter of law; and third, that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66, 8 O.O. 3d 73, 74, 375 N.E. 2d 46, 47.

The Ohio Supreme Court more recently reiterated the function of summary judgment in *Norris* v. *Ohio Standard Oil Co.* (1982), 70 Ohio St. 2d 1, 2-3, 24 O.O. 3d 1, 2, 433 N.E. 2d 615, 616:

" 'Summary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try. It must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. * * * A successful motion for summary judgment rests on the two-part foundation that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " (Citations omitted.)

It is necessary to analyze the statutory and case law of R.C. 1301.13 and the doctrine of accord and satisfaction to determine whether summary judgment was warranted. Accord and satisfaction is defined in the first and third headnotes of *Aerosonic Instru-*

*ment Corp.* v. *NuTone, Inc.* (C.P. 1958), 80 Ohio Law Abs. 289, 152 N.E. 2d 739:

"1. An accord is an agreement for giving and taking a thing in satisfaction of an existing claim or debt; the satisfaction is the actual giving and taking of such thing.

"* * *

"3. If there is to be an accord and satisfaction certain elements are essential (1) a proper subject matter; (2) competent parties; (3) an assent or meeting of the minds of the parties; (4) a consideration."

See, also, 15 Ohio Jurisprudence 3d (1979) 538, Compromise, Accord, and Release, Section 21.

The trial court summarily held that *Inger Interiors, supra,* is the law of Ohio as it is to be applied and that *Duhart, supra,* is clearly distinguishable.

Appellant contends that this case is similar to the situation in this court's decision in *Duhart, supra.* However, we agree with the trial court that *Duhart, supra,* is distinguishable. In *Duhart,* appellee-customer paid appellant-car dealer the purchase price of an automobile, plus taxes and the cost of a temporary license plate and signed all the documents necessary to transfer title. Thereafter, appellant sold the car to someone else. After some negotiations, appellant tendered to appellee a check for $6,300 which contained a restrictive endorsement which read "in total refund and release of all claims regarding stock #9637." Before cashing the check, appellee made a notation on it which read "endorsement is under protest with explicit reservations of all rights or remedies accruing to payee due to drawer's breach of contract to sell 1977 Lincoln automobile stock #9367 [*sic*] in accordance with O.R.C. § 1301.13." This court held that all the elements of ac-

cord and satisfaction were not met in that there was no assent or meeting of the minds of the parties; and there was no consideration. There was no consideration for the release of appellant from a claim for damages for breach of contract because "* * * appellant merely returned appellee's money, which he was legally obligated to do. * * *" There was no assent or meeting of the minds as to a release from a claim of breach of contract; the parties' respective notations clearly evidenced that.

Appellant contends in the instant case that the parties' notations on the check indicate an absence of assent or a meeting of the minds as in *Duhart.* However, the distinguishing feature between the instant case and *Duhart* is that a separate and distinct matter regarding breach of contract existed in *Duhart.* A separate matter is not present here. There is only a dispute as to the amount of money due. Furthermore, the case the *Duhart* court relied upon, *Warner Elevator Mfg. Co.* v. *Higbee* (1935), 53 Ohio App. 546, 22 Ohio Law Abs. 586, 7 O.O. 355, 5 N.E. 2d 947, is also distinguishable in that it appears that only oral statements indicated that the employment paycheck was intended as full payment; there was no "payment in full" notation on the employment paycheck itself. Further, it appears that these statements were not conclusive because additional oral statements by the company treasurer suggested that speaking to the company president could yield to the employee the balance claimed on account of salary. For these reasons, it was held that the employee did not, by cashing the check, agree that it was in full satisfaction of his claim. The company which tendered the check made it appear that the oral condition of the check's being in full payment was ineffective. Accord *Kiser* v. *Wilberforce Univ.* (1941), 33 Ohio Law Abs. 438, 35

N.E. 2d 771, paragraph two of the headnotes:

"2. A creditor who is tendered a check in payment of a disputed unliquidated amount, *with an acknowledgment thereupon of payment in full* for the services for which the payment is tendered, may either refuse to accept the check and not present it for payment, or present it for payment and collect on it upon the terms under which it was tendered; he cannot accept the benefit thereof and refuse the condition under which it was tendered, *unless the debtor has waived the condition and permitted it to be paid as a credit on account instead of in full settlement.*" (Emphasis added.)

A similar situation occurred in *Toledo Edison Co.* v. *Roberts* (1934), 50 Ohio App. 74, 17 Ohio Law Abs. 474, 3 O.O. 446, 197 N.E. 500. However, in that case, decided by this court, it was the payee of the check who, before cashing it, erased the condition of the drawer that acceptance of the check acknowledged payment in full. This court held that the erasure by the payee did not negate the drawer's express condition and that an accord and satisfaction had occurred upon the negotiation of the check. See, also, *First Natl. Bank & Trust Co.* v. *Fireproof Warehouse & Storage* (1983), 8 Ohio App. 3d 253, 8 OBR 326, 456 N.E. 2d 1336; *Morris Skilken & Co.* v. *Watkins Furniture Co.* (App. 1961), 87 Ohio Law Abs. 208, 18 O.O. 2d 374, 176 N.E. 2d 256; *Hudak* v. *Nationwide Mut. Ins. Co.* (1960), 112 Ohio App. 306, 84 Ohio Law Abs. 176, 13 O.O. 2d 434, 167 N.E. 2d 666; *Kiser, supra; Indianapolis* v. *Domhoff & Joyce Co.* (1941), 69 Ohio App. 109, 35 Ohio Law Abs. 232, 23 O.O. 547, 36 N.E. 2d 153, affirmed (1942), 140 Ohio St. 64, 23 O.O. 571, 42 N.E. 2d 445. Additionally, see *Platt* v. *Penetryn System, Inc.* (1949), 151 Ohio St. 451, 39 O.O. 273, 86 N.E. 2d 600, at the syllabus, which reads:

"The acceptance and cashing by a creditor of a check delivered by his debtor, with full knowledge of the condition that the check is inscribed 'Payment in full all compensation due,' in settlement of an unliquidated and contested claim of the creditor, constitute an accord and satisfaction."

*Inger Interiors, supra,* is clearly more in line with the case *sub judice* than *Duhart, supra.* In *Inger Interiors, supra,* as in this case, the appellants-customers and appellee-creditor genuinely disputed the amount due the creditor for services rendered to the customers. The customers tendered a check marked "paid in full" on the front and back. Accompanying the check was a letter indicating that the check was being tendered as "total payment in full" of all claims. The creditor crossed out the "paid in full" notations, wrote "partial payment," and deposited the check without further communication with the customers. The Court of Appeals for Cuyahoga County held that the creditor's acceptance by negotiation of the customers' check with the stated restriction constituted an accord and satisfaction which terminated the creditor's right to demand further payment. *Id.* at 97, 30 OBR at 195, 506 N.E. 2d at 1201.

The majority in *Inger Interiors, supra,* did not discuss R.C. 1301.13 (UCC 1-207). However, Judge Patton did discuss the application of R.C. 1301.13 (UCC 1-207) to such situations:

" 'Although no Ohio courts have applied [R.C. 1301.13] to the situation in the instant case, other jurisdictions have. [Citations omitted.] In *Scholl* v. *Tallman* (S.D. 1976), 247 N.W. 2d 490, the Supreme Court of South Dakota found that Section 1-207 of the Uniform Commercial Code applied to a situation where a creditor, under protest, deposited a check marked "Settlement in Full * * *" that he had received on

an unliquidated debt. The court held that because the creditor conditionally endorsed the check, he had effected an "explicit reservation of [his] rights" under Section 1-207 and thereby did not jeopardize his rights to the balance he maintained was due. *Scholl* has been followed in *Miller* v. *Jung* (Fla. App. 1976), 361 S[o]. 2d 788; and in *Kroulee Corporation* v. *A. Klein & Company, Inc.* (1980), 103 Misc. 2d 441, 426 N.Y.S[upp.] 2d 206.

" 'I find *Scholl's* interpretation of Section ·1-207 to be a salutary one. Were *Scholl* adopted in this state, a creditor would no longer be at the mercy of the debtor facing the dilemma of either accepting the lesser amount as full settlement or returning the check and gambling his chances of collecting anything. Instead, the risk of loss would be upon the debtor who, after having received protest from the creditor, could stop payment on the check. Even if it were too late for the debtor to stop payment, he would still have the opportunity to protest the remainder the creditor claimed to be due on the debt. * * *' (Footnotes omitted.)" *Id.* at 97-98, 30 OBR at 196, 506 N.E. 2d at 1202-1203.

The dissent's reasoning in *Inger Interiors* is persuasive. Nevertheless, this is only one aspect as to whether R.C. 1301.13 (UCC 1-207) should apply to negate the doctrine of accord and satisfaction. Much has been written on this issue. See White & Summers, Handbook of the Law Under the Uniform Commercial Code (2 Ed. 1980) 547, Section 13-21; Del Duca, Handling "Full Payment" Checks (1981), 13 U.C.C.L.J. 195; Hawkland, The Effect of U.C.C. § 1-207 on the Doctrine of Accord and Satisfaction by Conditional Check (1969), 74 Comm. L.J. 329; Rosenthal, Discord and Dissatisfaction: Section 1-207 of the Uniform Commercial Code (1978), 78 Colum. L. Rev. 48; Comment, Accord and Satisfaction: Conditional Tender by Check Under the Uniform Commercial Code (1969), 18 Buff. L. Rev. 539; Comment, UCC Section 1-207 and the Full Payment Check: The Struggle Between the Code and the Common Law—Where Do the Debtor and Creditor Fit In? (1982), 7 U. Dayton L. Rev. 421 (hereinafter "The Struggle Between the Code and the Common Law"); Comment, Does U.C.C. Section 1-207 Apply to the Doctrine of Accord and Satisfaction by Conditional Check? (1977), 11 Creighton L. Rev. 515; Note, Section 1-207 of the Uniform Commercial Code Not Intended to Apply to Doctrine of Accord and Satisfaction (1980), 15 Land & Water L. Rev. 737; Comment, Accord and Satisfaction Under Uniform Commercial Code Section 1-207: *Scholl* v. *Tallman* (1977), 38 Ohio St. L.J. 921. This court believes that the reasons that R.C. 1301.13 (UCC 1-207) should not apply to negate the doctrine of accord and satisfaction are much more numerous and persuasive than the one the *Inger Interiors* dissent states.

I. Legislative History of UCC 1-207

The author of the law review article, The Struggle Between the Code and the Common Law, *supra*, succinctly analyzes at 424-426 whether UCC 1-207 (including R.C. 1301.13) was intended by the drafters to apply to the full payment check:

"* * * U.C.C. section 1-207 provides that:

"['] A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice", "under protest" or the like are sufficient.[']

"This section first appeared in the Proposed Final Draft of 1950 and has

remained unchanged through the current official version.

"Of particular interest is the co-existence of sections 1-207 and 3-802(3) in the 1950 and 1952 drafts. In the 1952 Official Draft, section 3-802(3) provided:

"[']Where a check or similar payment instrument provides that it is in full satisfaction of an obligation the payee discharges the underlying obligation by obtaining payment of the instrument unless he establishes that the original obligor has taken unconscionable advantage in the circumstances.[']

"This section codified the common law where there was a disputed and unliquidated debt by providing that the underlying obligation is discharged by obtaining payment of the check unless the payee establishes that the original obligor has taken unconscionable advantage of him; however, section 3-802(3) changed the common law with regard to undisputed and unliquidated debts in that it speaks only of a check in 'full satisfaction of an obligation' without qualifying the term obligation or requiring that it be unliquidated or undisputed. The 1956 Official Draft subsequently deleted section 3-802(3).

"Sections 1-207 and 3-802(3) coexisted in the two drafts without any cross reference. The Official Comments to section 3-802(3) make it clear that it was meant to apply to accord and satisfaction. It is doubtful that the authors of the Code intended that two section [sic] affect the same thing. This in turn suggests that section 1-207 was not originally intended to apply to the full payment check at all. In addition, the deletion of section 3-802(3) does not necessarily imply that section 1-207 now controls these types of transactions because the official comments to section 1-207 make no mention of such a change. 'The most plausible explanation is that the drafter of

the Code decided to leave accord and satisfaction to the courts.'

"Another source of interpretation for section 1-207 is the Official Comments to the Code. Official Comment 1 to section 1-207 states:

"[']This section provides machinery for the continuation of performance along the lines contemplated by the contract despite a pending dispute, by adopting the mercantile device of going ahead with delivery, acceptance, or payment 'without prejudice', 'under protest', 'with reservation of all our rights' and the like.[']

"Although the Official Comments usually point out any changes the section would make on the existing law, the comment to section 1-207 fails to note any such change. Once again, this implies that section 1-207 was never intended to apply to the full payment check. In a frequently cited article, Albert Rosenthal noted that 'if so fundamental a change in the law of accord and satisfaction had been intended it seems likely that it would have been articulated—particularly during the critical years in the mid-fifties, when the fate of the Code probably hung in precarious balance. * * *' " (Citations omitted.)

The article goes on to state that only five states' annotations articulate that that state's version of UCC 1-207 is to apply to full payment checks.

## II. Language of UCC 1-207

Another reason for not applying R.C. 1301.13 to full payment checks was based on the plain meaning of the statutory language. The Wyoming Supreme Court in *Jahn* v. *Burns* (1979), 593 P. 2d 828, 830, found that based on the plain meaning of its state's version of UCC 1-207, " * * * [t]he manner offered here is part payment *conditioned on it being in full settlement.* In an attempt to reserve rights, plaintiff did not 'assent to per-

formance *in the manner offered'* " (emphasis *sic*) as UCC 1-207 provides. The court therefore concluded that UCC 1-207 was not meant to apply to the full payment check.

Furthermore, a Washington appellate court stated that UCC 1-103 (R.C. 1301.03[1]) requires "* * * that the principles of law and equity are not to be displaced by particular provisions of the Code unless done so explicitly by the Code." *Dept. of Fisheries* v. *J-Z Sales Corp.* (1980), 25 Wash. App. 671, 681-682, 610 P. 2d 390, 395. The court consequently held that UCC 1-207 "* * * does not explicitly supersede the law pertaining to accord and satisfaction, and it should not be inferred as doing so." *Id.* at 682, 610 P. 2d at 396.

### III. Lack of Mutual Assent

A reason related to that of the plain meaning of the statutory language for not applying R.C. 1301.13 (UCC 1-207) to a full payment check is lack of mutual assent between the parties as to the creditor's reserving its rights contrary to the debtor's "payment in full" condition. The author of Accord and Satisfaction Under Uniform Commercial Code Section 1-207: *Scholl* v. *Tallman, supra,* at 934, sets forth a hypothetical in explanation:

"* * * Suppose that *C* performs work for *D* under a contract that mentions levels of quality without specifying any objective means of measuring quality. The contract price is $5,000 but *D* believes that because of poor workmanship, only $4,000 should be paid; *C* of course disagrees. *D* tenders a check for $4,500 marked 'paid in full.' At this point, *C* has been given an offer to settle that he can accept or reject. *When C cashes the check, there is objective mutual assent to an accord and satisfaction.* The fact the *C* does not know the legal consequences of his act is not controlling; *C* understood that *D* offered to settle the dispute with a check tendered in full payment. In this case, *D* has not unilaterally determined *C*'s rights. However, allowing *C* to reserve his rights by stipulating a condition on the back of *D*'s check before cashing it leaves *D* no opportunity to accept or reject *C*'s 'counteroffer.' *D* might have preferred either to settle or to litigate the entire matter. If *C* is allowed to reserve his rights, *D* can litigate only the remaining amount due.

"* * * [The creditor would be] unilaterally determining his own rights and those of the debtor. * * *" (Footnotes omitted and emphasis added.)

Thus, by allowing the doctrine of accord and satisfaction to stand unaffected by R.C. 1301.13, mutual assent to the condition of the check's being in full payment of the disputed amount is evidenced by the negotiation of the check. As a result, neither party is unilaterally determining the rights of the other party. The cashing of the check is the acceptance of "payment in full" and words of restriction amount to a counteroffer which has not been communicated to the other party, nor assented to, and thus is ineffectual.

### IV. Policy Surrounding UCC 1-207

The author of The Struggle Between the Code and the Common Law, *supra,* points out at 431 that "[t]he policy rejecting the application of section 1-207 to the full payment check

---

[1] R.C. 1301.03 (UCC 1-103) (supplementary general principles of law applicable) provides:

"Unless displaced by the particular provisions of Chapters 1301., 1302., 1303., 1304., 1305., 1306., 1307., 1308., and 1309. of the Revised Code, the principles of law and equity * * * shall supplement its provisions."

recognizes that a debtor's attempt to make a good faith offer to compromise would be futile under the Code. * * *'' The article then quotes *Chancellor, Inc.* v. *Hamilton Appliance Co.* (1980), 175 N.J. Super. 345, 352, 418 A. 2d 1326, 1330:

"['][I]f the court were to conclude that a creditor could reserve his rights on a "full payment check," a convenient and informal device for the resolution of disagreements in the business community would be seriously impeded. The court is hesitant to impair such a valuable, informal settlement tool where there is no indication that the legislature intended that result.[']" (Footnote omitted.)

A related reason to hesitate before impairing such an effective dispute-resolution device is that if R.C. 1301.13 were to be applied to negate the doctrine of accord and satisfaction, then litigation would undoubtedly increase and the floodgates to the courts would open. Every time a creditor would write "all rights reserved" on a check conditionally tendered as "payment in full" the courts of this state would be excessively burdened with resolving what the doctrine of accord and satisfaction was originally intended to avoid. That is to say, the general policies of the Uniform Commercial Code provided for in UCC 1-102(2) (R.C. 1301.02[B]) of simplifying and clarifying the law would not be furthered; rather, applying R.C. 1301.13 to negate the effect of the doctrine of accord and satisfaction would only complicate the law.

Accordingly, for the foregoing reasons, appellant's first assignment of error is found not well-taken.

The conflicts supposedly created by the application of R.C. 1301.13, *Duhart, supra,* and *Inger Interiors, supra,* being resolved, reasonable minds cannot come to differing conclusions. Thus, summary judgment was appropriate and, accordingly, appellant's second assigment of error is also found not well-taken.

On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., and GLASSER, J., concur.