AFC INTERIORS, APPELLANT, *v.* DICELLO,
D.B.A. OHIO STATE HOME SERVICES, APPELLEE.

[Cite as AFC Interiors *v.* DiCello (1989), 46 Ohio St. 3d 1.]

2

(No. 88-1541—Submitted June 6, 1989—Decided October 4, 1989.)

*Ruport Co., L.P.A., Scott H. Ruport* and *Mary Beth Green,* for appellant.

*Robert V. Housel,* for appellee.

SWEENEY, J. The dispositive question presented in this cause is whether an accord and satisfaction has taken place with regard to the debt owed by DiCello to AFC. The appellee, DiCello, contends that an accord and satisfaction has taken place under the instant facts. The appellant, AFC, argues however that R.C. 1301.13, which embodies Section 1-207 of the Uniform Commercial Code ("UCC"), should supersede the doctrine of accord and satisfaction in the "full payment" or "conditional check" situation

where the payee reserves his or her rights to pursue the balance of the debt alleged to be owed.

Accord and satisfaction is a common-law doctrine where there is a contract between a creditor and debtor for settlement of a claim by some performance other than that which is due. See Grosse & Goggin, Accord and Satisfaction and the 1-207 Dilemma (1984), 89 Comm. L.J. 537. Satisfaction takes place when the creditor accepts the accord. *Id.*; see, also, *State, ex rel. Shady Acres Nursing Home, Inc.,* v. *Rhodes* (1983), 7 Ohio St. 3d 7, 7 OBR 318, 455 N.E. 2d 489.

In the cause *sub judice,* DiCello tendered a check for an amount apparently less than what AFC expected. The check carried the notation that it constituted payment in full for any and all claims that AFC may have against DiCello. AFC crossed out the notation and inserted the words "Payment on Account" and further negotiated the check. Under Ohio law, it has been held that in such a situation the creditor had "* * * but one alternative; he must accept the amount tendered upon the terms of the condition, unless the condition be waived, or he must reject it entirely, or if he has received the amount by check in a letter, he must return it." *Seeds Grain & Hay Co.* v. *Conger* (1910), 83 Ohio St. 169, 93 N.E. 892, paragraph one of the syllabus. See, also, *Inger Interiors* v. *Peralta* (1986), 30 Ohio App. 3d 94, 30 OBR 193, 506 N.E. 2d 1199. Thus, the precise question before this court is whether the special endorsement of the check by AFC with knowledge of a dispute as to the amount due, and with knowledge of the conditional statement on the check, constituted an acceptance of the conditional check, *i.e.,* an accord and satisfaction. In light of the language of R.C. 1301.13, we do not believe that the special endorsement by AFC reserving its rights and subsequent negotiation of the check should continue to be recognized as an accord and satisfaction. Therefore, we reverse the decision of the court of appeals below and remand the cause for further proceedings.

R.C. 1301.13 (UCC 1-207) provides:

"A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice,' 'under protest,' or the like are sufficient."

The Official Comment to this section provides in part:

"1. This section provides machinery for the continuation of performance along the lines contemplated by the contract despite a pending dispute, by adopting the mercantile device of going ahead with delivery, acceptance, *or payment* 'without prejudice,' 'under protest,' 'under reserve,' 'with reservation of all our rights,' and the like. All of these phrases completely reserve all rights within the meaning of this section. The section therefore contemplates that limited as well as general reservations and acceptance by a party may be made 'subject to satisfaction of our purchaser,' 'subject to acceptance by our customers,' or the like." (Emphasis added.)

The issue of whether UCC 1-207 should apply to supersede the doctrine of accord and satisfaction has been the subject of much scholarly debate. Courts in different jurisdictions are split with regard to the effect of UCC 1-207 in this context. See, *e.g.,* White & Summers, Uniform Commercial Code (3 Ed. 1988) 689-692, Section 13-24; Note, Contracts—Section 1-207 of the Uniform Commercial Code Not Intended to Apply to Doctrine of Accord & Satisfaction (1980), 15 Land &

Water Review 737-748; and Hawkland, The Effect of UCC Section 1-207 on the Doctrine of Accord and Satisfaction by Conditional Check (1969), 74 Comm. L.J. 329.

We are of the opinion, however, that the drafters of the UCC, and Ohio's General Assembly, promulgated UCC 1-207 in response to a perceived injustice to creditors that occurs where a creditor, under protest, deposits a check marked "paid in full" or the like, and later discovers that an accord and satisfaction has taken place which extinguished the right to demand further payment on the debt.

While this court has not applied R.C. 1301.13 (UCC 1-207) in factual situations similar to the case at bar, it appears that a discernible trend has developed whereby UCC 1-207 is used to supersede the common-law doctrine of accord and satisfaction in "full payment" or "conditional check" situations. Subsequent to the adoption of the UCC, at least two other jurisdictions dealt with the subject, albeit in dicta. See *Hanna* v. *Perkins* (N.Y. Cty. Ct. 1965), 2 UCC Rep. Serv. 1044; *Baillie Lumber Co.* v. *Kincaid Carolina Corp.* (1969), 4 N.C. App. 342, 167 S.E. 2d 85. In *Baillie, supra,* the court stated that its version of UCC 1-207 would prevent an accord and satisfaction where a conditional check was endorsed "With reservation of all our rights." *Id.* at 353, 167 S.E. 2d at 93. In *Hanna, supra,* the court did not rely on UCC 1-207 because it found no accord and satisfaction based on the fact that there was a triable issue therein. However, the court cited UCC 1-207 and opined that "[i]f it were not that this court finds that triable issues of fact are present, this court would deny the motion by holding this particular section of the code would seem to favor plaintiff's overriding indorsement of 'Deposited

under protest' as a reservation of his right to collect payment of [the] balance." *Id.* at 1046.

As the debate concerning the scope of UCC 1-207 grew, courts around the country proceeded to make decisions concerning its application. In *Scholl* v. *Tallman* (S.D. 1976), 247 N.W. 2d 490, the South Dakota Supreme Court faced a factual situation similar to the instant cause and held that UCC 1-207 applied to the "conditional check" situation. Therein, the creditor deposited, under protest, a check marked "Settlement in Full * * *" from a debtor by scratching out the debtor's full-settlement notation and writing above his own endorsement, "Restriction of payment in full refused. $1,826.65 remains due and payable." The court stated that the creditor effected "an explicit reservation of rights under * *· * [1-207]" and thereby did not jeopardize his rights to the balance he maintained was due. *Id.* at 492.

More recently, in *Horn Waterproofing Corp.* v. *Bushwick Iron & Steel Co., Inc.* (1985), 66 N.Y. 2d 321, 497 N.Y. Supp. 2d 310, 488 N.E. 2d 56, the debtor sent the creditor a check for less than the amount owed with a "full payment" notation. The creditor endorsed the check and added the notation "Under Protest," and brought an action to recover the balance alleged to be due. The court applied the UCC and held that a creditor may preserve his right to the balance of a disputed claim by explicit reservation in his endorsement of the check tendered by the debtor as full payment under UCC 1-207. See *Majestic Bldg. Material Corp.* v. *Gateway Plumbing, Inc.* (Mo. App. 1985), 694 S.W. 2d 762.

In addition to the above-cited precedents, it appears that four other jurisdictions (Delaware, Florida, Massachusetts and New Hampshire)

have embraced the view that the UCC 1-207 supersedes the common-law doctrine of accord and satisfaction in the local comments to their respective versions of UCC 1-207. See White & Summers, *supra*, at 691, fn. 4.

While the issue is far from settled in other jurisdictions, the competing viewpoints regarding the appropriateness of applying UCC 1-207 were best summarized by White & Summers, *supra*, at 691-692:

"* * * Those arguing that 1-207 does not alter the common law rule typically start with the position, generally unassailable, that the offeror is 'master of his offer.' They point out that the drawer has made an offer, namely that of full payment, and they argue that allowing the payee to accept the money without the other terms of the offer is not only unfair, but also in direct conflict with the traditional notions of contract formation. Those who apply 1-207 and readily reject the common law outcome characterize the offeror as a chisler [*sic*]. He knows that he owes $10,000 and hopes to get away with $9,000. While we have no empirical basis for concluding the typical offeror is a chiseler as opposed to a legitimately aggrieved debtor, we are inclined to that view."

While we disdain characterizing any of the parties to the instant action in such a manner, we believe that the framers of the UCC drafted Section 1-207 in order to balance the interests of debtors and creditors in a more equitable manner. In any event, we are persuaded that UCC 1-207 was intended to apply in the situation confronting us in the cause *sub judice.*

At least one Ohio appellate judge has recognized the perspicaciousness of the *Scholl* interpretation of UCC 1-207 by noting that if such a rationale were adopted in Ohio, " '* * * a creditor would no longer be at the mercy of the debtor facing the dilemma of either accepting the lesser amount as full settlement or returning the check and gambling his chances of collecting anything. Instead, the risk of loss would be upon the debtor who, after having received protest from the creditor, could stop payment on the check. Even if it were too late for the debtor to stop payment, he would still have the opportunity to protest the remainder the creditor claimed to be due on the debt. * * *' " *Inger Interiors, supra,* at 98, 30 OBR at 196, 506 N.E. 2d at 1202-1203 (Patton, J., dissenting). See, also, *Duhart* v. *Franklin Park Lincoln-Mercury* (July 1, 1983), Lucas App. No. L-83-027, unreported. Cf. *Hearst Corp.* v. *Lauerer, Markin & Gibbs, Inc.* (1987), 37 Ohio App. 3d 87, 524 N.E. 2d 193, wherein Judge Patton's dissent in *Inger Interiors* was characterized as "persuasive." *Id.* at 91, 524 N.E. 2d at 197.

In applying the provisions of R.C. 1301.13 to the facts of the cause *sub judice,* we find that appellant explicitly reserved its rights by crossing out DiCello's notation on the back of the check and substituting its own notation, "Payment on Account." By putting DiCello on notice in such a manner, AFC reserved its rights to collect the balance alleged to be due.

Therefore, based on the foregoing, we hold that R.C. 1301.13, which embodies UCC 1-207, supersedes the common-law doctrine of accord and satisfaction in the "full payment" or "conditional check" situation.

Moreover, we expressly overrule this court's prior pronouncement in *Seeds Grain, supra,* and further hold that pursuant to R.C. 1301.13, where a debtor tenders a check to a creditor as payment in full for less than the amount alleged to be owed on the debt, the creditor may accept the check as partial payment on the debt so long as

the creditor explicitly reserves all rights by endorsing the check "under protest" or any legend sufficient to apprise the debtor that the check is not accepted as full payment on the debt. In so doing, the creditor does not thereby prejudice any rights reserved on the balance alleged to be due.

Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

*Judgment reversed and cause remanded.*

HOLMES, DOUGLAS and RESNICK, JJ., concur.

MOYER, C.J., WRIGHT and H. BROWN, JJ., dissent.

H. BROWN, J., dissenting. To reach its decision, the majority has misread and misapplied the Uniform Commercial Code, ignored the overwhelming weight of authority in other jurisdictions, and overruled the long-standing decisional law of this state, most particularly as pronounced in *Seeds Grain & Hay Co.* v. *Conger* (1910), 83 Ohio St. 169, 93 N.E. 892. Further, the majority reverses the unanimous decision of the court of appeals and the judgment granted in the trial court. I respectfully, but vigorously, dissent.

At common law, an accord and satisfaction is accomplished when a creditor accepts and deposits a check which the debtor offers as full payment for an unliquidated or disputed debt. *Platt* v. *Penetryn Sys., Inc.* (1949), 151 Ohio St. 451, 39 O.O. 273, 86 N.E. 2d 600; *Yin* v. *Amino Products Co.* (1943), 141 Ohio St. 21, 25 O.O. 136, 46 N.E. 2d 610; *Seeds Grain & Hay Co., supra.*

By cashing the check, the creditor manifests assent to the terms of a new contract which extinguishes the debtor's prior contractual obligation. This holds true even if the creditor erases the full-payment language on the check, endorses the check with partial-payment language (or some other language indicating a reservation of rights), or later informs the debtor he intends to collect the full amount. *Toledo Edison Co.* v. *Roberts* (1934), 50 Ohio App. 74, 3 O.O. 446, 197 N.E. 500; *Morris Skilken & Co., Inc.* v. *Watkins Furniture Co.* (App. 1961), 18 O.O. 2d 374, 176 N.E. 2d 256; *Inger Interiors* v. *Peralta* (1986), 30 Ohio App. 3d 94, 30 OBR 193, 506 N.E. 2d 1199; *First Natl. Bank & Trust Co.* v. *Fireproof Warehouse & Storage* (1983), 8 Ohio App. 3d 253, 8 OBR 326, 456 N.E. 2d 1336. In *Seeds Grain, supra,* at paragraph one of the syllabus, this court stated:

"Where there is a *bona fide* dispute over an unliquidated demand and the debtor tenders an amount less than the amount in dispute, upon the express condition that it shall be in full of the disputed claim, the creditor has but one alternative; he must accept the amount tendered upon the terms of the condition, unless the condition be waived, or he must reject it entirely, or if he has received the amount by check in a letter, he must return it."

The case before us satisfies the elements of accord and satisfaction. A bona-fide dispute existed as to whether DiCello has the option to return the furniture he did not want for full credit. Moreover, DiCello claimed he was being charged for furniture he did not receive. Along with the returned items and a letter explaining his actions,[1] DiCello delivered a check to AFC marked "PAYMENT IN FULL

---

[1] The letter stated:
"July 3, 1985

"A.F.C. Interiors, 1357 Home Ave., Akron, Ohio

FOR ANY AND ALL CLAIMS AGAINST NICK DICELLO." The deposition of Kenneth Henderson, AFC's vice-president, demonstrates he understood DiCello's intention was to fully settle the account.[2] Henderson took the check, crossed out the words "Payment in full for any and all claims against Nick DiCello," inserted "Payment on Account," and deposited the check before giving notice to DiCello that AFC intended to collect the full amount.

AFC contends (and the majority finds) that R.C. 1301.13 (UCC 1-207) supersedes the common-law doctrine of accord and satisfaction in the "full payment" or "conditional check" situation. For the following reasons, I disagree.

R.C. 1301.13 (UCC 1-207) provides: "A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice,' 'under protest,' or the like are sufficient."

First, full-payment checks are a widely recognized means of implementing settlements. An interpretation of R.C. 1301.13 (UCC 1-207) alter-

ing common-law accord and satisfaction on full-payment checks "would make informal settlements of disputes more difficult and would effect a substantial shift in the balance of power between disputatious creditors and debtors." Rosenthal, Discord and Dissatisfaction: Section 1-207 of the Uniform Commercial Code (1978), 78 Colum. L. Rev. 48, 58. See, also, *Stultz Elec. Works* v. *Marine Hydraulic Eng. Co.* (Me. 1984), 484 A. 2d 1008, 1011-1012 ("If we were to hold * * * that section 1-207 may operate to bar an accord and satisfaction full payment checks would essentially become obsolete. A debtor wishing to issue such an instrument would unavoidably face the risk that the creditor would accept the check only to subsequently add language reserving rights. Thus, a convenient mode of compromise would disappear and our courts would be forced to resolve disputes that might have otherwise been effectively settled.").

Second, the language of R.C. 1301.13 (UCC 1-207) and its Official Comment indicate the statute is intended to provide a means by which a party to an executory contract can accept defective performance under the contract without prejudicing his right to adequate performance.[3] The Official

---

"Mr. Henderson,

"Last year your sales agent, Robin Myers, and I entered into an agreement to furnish my new apartment. The stipulations were that the furniture would be delivered and those items I wished to keep would be purchased; those items not wanted would be returned to AFC Interiors.

"Per my agreement enclosed is a check in the full amount on the items I decided to keep. I am also returning, along with the check, the unwanted items.

"Nick DiCello"

[2] AFC contends that the check was of-

fered as payment for the furniture kept by DiCello and that, if an accord and satisfaction was reached, it only covered the retained furniture and not the returned goods. Whether the accord was offered for the entire dealings between the parties or only for the retained furniture is a question of fact within the discretion of the finder of fact. *Yin, supra,* at paragraph two of the syllabus. It was not an abuse of discretion for the trial judge to find that the accord offered by DiCello covered the whole transaction between the parties and was accepted as such.

[3] R.C. Chapter 1302 (UCC Article 2)

Comment to R.C. 1301.13 states in part:

"1. *This section provides machinery for the continuation of performance along the lines contemplated by the contract despite a pending dispute,* by adopting the mercantile device of going ahead with delivery, acceptance, or payment 'without prejudice,' 'under protest,' 'under reserve,' 'with reservation of all our rights,' and the like. * * *

"2. *This section* does not add any new requirement of language of reservation where not already required by law, but *merely provides a specific measure on which a party can rely as he makes or concurs in any interim adjustment in the course of performance.* * * *" (Emphasis added.)

Accord and satisfaction, on the other hand, involves the creation and execution of a *new contract,* not performance (or even payment) pursuant to an executory contract. The creditor cannot accept the new contract, a material term of which is the extinguishment of the debtor's obligation, and simultaneously reserve rights to collect the full amount under the original contract. See *Flambeau Prod. Corp.* v. *Honeywell Information Sys., Inc.* (1984), 116 Wis. 2d 95, 111, 341 N.W. 2d 655, 663 ("The interests of fairness dictate that a creditor who cashes a check offered in full payment should be bound by the terms of the offer. The debtor's intent is known, and allowing the creditor to keep the money disregarding the debtor's conditions seems unfair and violative of the obligation of good faith which the UCC

makes applicable to every contractor duty.").

This reading of R.C. 1301.13 (UCC 1-207) and its Official Comment is supported by numerous courts and commentators. See, *e.g., Stultz Electric Works* v. *Marine Hydraulic Eng. Co., supra,* at 1011 ("Under the facts of this case, the Defendant's unambiguous notation of full payment was an offer to create a new contract, an accord. The Plaintiff assented to this offer when it endorsed and deposited the Defendant's check. The Plaintiff's statement regarding a reservation of rights was a counteroffer, an offer to which the Defendant was never provided an opportunity to respond. As a result, there is no acceptable alternative to finding that the Defendant's terms became binding."); *Cass Constr. Co.* v. *Brennan* (1986), 222 Neb. 69, 75, 382 N.W. 2d 313, 318 ("[A]n accord and satisfaction involves a *new* contract, not the contemplated performance of the original contract. By its specific terms § 1-207 does not apply in situations involving a conditional check but, rather, in circumstances where, for example, a buyer makes an installment payment under a contract which it believes the seller has breached, or where a buyer accepts delivery of goods that it believes do not conform to the contract, or where the seller goes ahead with its performance in spite of anticipatory repudiation by the buyer."); Corbin, Contracts (Supp. 1989, Part 2) 506, Section 1279 ("The intent of § 1-207, as expressed in its comments, is to provide a mechanism which governs cases where there is 'continuation of performance' and [in]

---

provides numerous circumstances in which acquiescence in the defective performance of one party can prejudice the other party's ability to obtain the performance bargained for. See, *e.g.,* R.C. 1302.11 (UCC 2-208), 1302.61 (UCC 2-602), 1302.63 (UCC 2-605),

1302.64 (UCC 2-606), 1302.65 (UCC 2-607), 1302.70 (UCC 2-612), and 1302.74 (UCC 2-616). See, also, *County Fire Door Corp.* v. *C.F. Wooding Co.* (1987), 202 Conn. 277, 287, 520 A. 2d 1028, 1033.

which 'interim adjustments' or disputes may arise. It is obvious that only situations where the contract is still executory to a greater extent than the payment of a single sum of money will meet that criterion. There is nowhere in the comments any hint that this section was intended to destroy the ability of parties to enter into binding settlements after all performance other than payment has been completed."); Hillman, McDonnell & Nickles, Common Law and Equity Under the Uniform Commercial Code (1985) 15-30, Paragraph 15.03[3] (Section 1-207 "* * * sought to deal not with the 'take it or leave it' check but with problems of waiver, election of remedies, and estoppel that can arise by force of law when an unacceptable performance is forthcoming from one party to a contract.") (footnote omitted); McDonnell, Purposive Interpretation of the Uniform Commercial Code: Some Implications for Jurisprudence (1978), 126 U. Pa. L. Rev. 795, 827-828 (The language, commentary, and history of section 1-207 "strongly suggest that the provision was designed to deal with problems of waiver, election of remedies, and estoppel rather than with attempted accord and satisfaction."); Fry, You Can't Have Your Cake and Eat it Too: Accord and Satisfaction Survives the Uniform Commercial Code (1985), 61 N.D.L. Rev. 353, 381-382 ("The language of the section [1-207] refers to the original transaction between the parties. The comment addresses the effect of estoppel and waiver where a party makes demands

under the original contract. The section is clearly applicable when demands are made under an existing agreement. It is designed to permit a party to continue to perform without having to fear that such continued performance, or receipt of less than the agreed performance, will operate as an estoppel or waiver. The section does not clearly apply, however, to offers of modification or settlement. An accord and satisfaction is a second contract which operates to settle disputes that have arisen. The policy of the Code, as indicated by numerous other provisions, seems to be to facilitate settlement agreements by abandoning the pre-existing duty rule and permitting parties to freely modify existing contractual relations. Nothing in the language of section 1-207 indicates that it was intended to be an exception to this policy."). (Footnotes omitted.)

Third, common-law rules governing commercial transactions remain in effect unless displaced by the provisions of the Ohio Uniform Commercial Code. R.C. 1301.03.[4] Neither R.C. 1301.13 nor its Official Comment indicates that the statute was intended to displace common-law accord and satisfaction. Rather, the absence of any mention of such a widely used and long-standing commercial device as accord and satisfaction is a strong indication the statute was not intended to negate its use. This inference is strengthened by the co-existence without cross-reference of both Section 1-207 and a section explicitly recognizing full-payment checks[5] in early

---

[4] R.C. 1301.03 states:

"Unless displaced by the particular provisions of Chapters 1301., 1302., 1303., 1304., 1305., 1306., 1307., 1308., and 1309. of the Revised Code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, mis-

representation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

[5] Section 3-802(3) of the 1952 Uniform Commercial Code Official Draft provided:

"Where a check or similar payment in-

drafts of the UCC. See Rosenthal, Discord and Dissatisfaction: Section 1-207 of the Uniform Commercial Code (1978), 78 Colum. L. Rev. 48, 58-63.

Fourth, the Ohio Uniform Commercial Code recognizes the use of full-payment checks and provides consequences similar to those at common law. R.C. 1303.11 (UCC 3-112) states that the negotiability of a check is not affected by "a term in a draft providing that the payee by indorsing or cashing it acknowledges full satisfaction of an obligation of the drawer." R.C. 1303.11(A)(6). Unless otherwise agreed, where a check is taken for an underlying obligation, the discharge of the underlying obligor on the check[6] also discharges him on the obligation.[7] R.C. 1303.75 (UCC 3-802).

A creditor cannot change this result by eradicating the payment-in-full language on the check or adding words of reservation. R.C. 1303.43(B)

(2) provides that a check which has been materially altered is enforceable only *according to its original tenor*.[8] An alteration of a check is material if it "changes the contract of any party thereto in any respect, including any such change in: * * * the writing as signed, by adding to it or by removing any part of it." R.C. 1303.43(A)(3).

As stated in the well-reasoned decision of *County Fire Door Corp.* v. *C. F. Wooding Co.* (1987), 202 Conn. 277, 286, 520 A. 2d 1028, 1033:

"The impact of these various article 3 rules is clear. Because the check tendered by the defendant was only enforceable 'according to its original tenor,' the plaintiff, by receiving 'payment or satisfaction,' discharged the defendant not only on the instrument but also on the underlying obligation. * * * To read * * * [Section 1-207] to validate the plaintiff's conduct in this case would, therefore, fly in the face of

---

strument provides that it is in full satisfaction of an obligation the payee discharges the underlying obligation by obtaining payment of the instrument unless he establishes that the original obligor has taken unconscionable advantage in the circumstances."

The Official Comments to the section made it clear the section was to apply even where the debtor's obligation was undisputed and liquidated, thus changing the law of most states. The section was deleted from the 1957 Uniform Commercial Code Official Draft because it "* * * evoked criticism on the ground that it would work hardship, and was open to abuse." Supplement No. 1 to 1952 Uniform Commercial Code Official Draft at 25.

[6] A person is discharged from liability on a check by payment to the holder of the check. R.C. 1303.69(A) (UCC 3-603).

[7] R.C. 1303.75(A) provides:

"*Unless otherwise agreed where an instrument is taken for an underlying obligation*:

"(1) the obligation is pro tanto dis-

charged if a bank is drawer, maker, or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor; and

"(2) in any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; *discharge of the underlying obligor on the instrument also discharges him on the obligation*." (Emphasis added.)

[8] R.C. 1303.43(B) provides:

"As against any person other than a subsequent holder in due course:

"(1) *alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed* unless that party assents [to] or is precluded from asserting the defense;

"(2) *no other alteration discharges any party and the instrument may be enforced according to its original tenor,* or as to incomplete instruments according to the authority given." (Emphasis added.)

the relevant provisions of article 3, which signal the continued vitality of the common law principles of accord and satisfaction."

Finally, the great majority of courts and legal scholars which have addressed the relationship between full-payment checks and Section 1-207 have held that Section 1-207 does not affect common-law accord and satisfaction. See, *e.g., Air Van Lines, Inc.* v. *Buster* (Alaska 1983), 673 P. 2d 774; *Pillow* v. *Thermogas Co.* (1982), 6 Ark. App. 402, 644 S.W. 2d 292; *Connecticut Printers, Inc.* v. *Gus Kroesen, Inc.* (1982), 134 Cal. App. 3d 54, 184 Cal. Rptr. 436; *Anderson* v. *Rosebrook* (Colo. 1987), 737 P. 2d 417; *County Fire Door Corp.* v. *C.F. Wooding Co., supra; Eder* v. *Yvette B. Gervey Interiors, Inc.* (Fla. App. 1981), 407 So. 2d 312; *Stultz Elec. Works* v. *Marine Hydraulic Eng. Co., supra; Cass Constr. Co.* v. *Brennan, supra; Chancellor, Inc.* v. *Hamilton Appliance Co., Inc.* (1980), 175 N.J. Super. 345, 418 A. 2d 1326; *Brown* v. *Coastal Truckways, Inc.* (1980), 44 N.C. App. 454, 261 S.E. 2d 266; *Les Schwab Tire Centers of Oregon, Inc.* v. *Ivory Ranch, Inc.* (1983), 63 Ore. App. 364, 664 P. 2d 419; *Pileco, Inc.* v. *HCI, Inc.* (Tex. App. 1987), 735 S.W. 2d 561; *Marton Remodeling* v. *Jensen* (Utah 1985), 706 P. 2d 607; *Department of Fisheries* v. *J-Z Sales Corp.* (1980), 25 Wash. App. 671, 610 P. 2d 390; *Flambeau Prod. Corp.* v. *Honeywell Information Sys., Inc., supra; Jahn* v. *Burns* (Wyo. 1979), 593 P. 2d 828; Corbin, Contracts, *supra,* at 506-508, Section 1279; 6 Anderson, Uniform Commercial Code (3 Ed. 1984) 265-268, Sections 3-408:54 through 3-408:57; 2 Restatement of the Law 2d, Contracts (1981) 373-374 and 383-384, Sections 278, Comment *a,* and Section 281, Comment *d;* Rosenthal, Discord and Dissatisfaction, *supra;* McDonnell, Purposive Interpretation of the Uniform Commercial Code, *supra,* at 824-828; Caraballo, The Tender Trap: UCC § 1-207 and its Applicability to an Attempted Accord and Satisfaction by Tendering a Check in a Dispute Arising From a Sale of Goods (1981), 11 Seton Hall L. Rev. 445; Grosse & Goggin, Accord and Satisfaction and the 1-207 Dilemma (1984), 89 Comm. L. J. 537; Fry, You Can't Have Your Cake and Eat it Too, *supra.* Contra, 1 White & Summers, Uniform Commercial Code (3 Ed. 1988) 689-692, Section 13-24.

The consensus against the majority's position includes courts of appeals in Ohio. See *Hearst Corp.* v. *Lauerer, Markin & Gibbs, Inc.* (1987), 37 Ohio App. 3d 87, 524 N.E. 2d 193; *T. H. Elsass Co., L.P.A.* v. *Sargent* (Feb. 7, 1985), Franklin App. No. 84AP-828, unreported. Contra *Duhart* v. *Franklin Park Lincoln-Mercury* (July 1, 1983), Lucas App. No. L-83-027, unreported. The majority (characterizing the case law in other jurisdictions as "split") has chosen to ignore this overwhelming body of authority against the position it has adopted.

The *only* two high court holdings to the contrary were premised in part on factors which do not exist in Ohio. See *Horn Waterproofing Corp.* v. *Bushwick Iron & Steel Co., Inc.* (1985), 66 N.Y. 2d 321, 497 N.Y. Supp. 2d 310, 488 N.E. 2d 56; *Scholl* v. *Tallman* (S.D. 1976), 247 N.W. 2d 490. In New York, a commission on uniform state laws submitted a report to the New York Legislature indicating (New York's) UCC 1-207 was intended to change the doctrine of accord and satisfaction. *Horn Waterproofing, supra.* Thus, the legislative history of Section 1-207 in New York was materially different from the majority of states, including Ohio. In South Dakota (contrary to Ohio and elsewhere), the state's common law accepted and enforced a reservation of rights on a full-

payment check. *Scholl, supra.* Yet these are the two decisions upon which the majority seizes while failing to discuss the weight of case law to the contrary.[9] This is no mere "split" of authority.

R.C. 1301.02 (UCC 1-102) provides that the provisions of the Ohio Uniform Commercial Code shall be construed and applied to promote their underlying purpose and policies. One of the underlying purposes and policies of the code is "to make uniform the law among the various jurisdictions." *Id.* This alone should give the majority pause in parting company from the substantial majority of jurisdictions which hold that R.C. 1301.13 does not affect accord and satisfaction.

Although problems will arise because of overreaching debtors, the doctrine of accord and satisfaction provides sufficient safeguards: there must be a good-faith dispute about the debt and the creditor must have reasonable notice that the check is intended to be in full satisfaction of the debt. *Flambeau Products Corp., supra,* at 111, 341 N.W. 2d at 663. In addition, the Ohio Uniform Commercial Code allows a court to refuse to enforce an unconscionable contract. R.C. 1302.15 (UCC 2-302).

I would affirm the decision of the court of appeals which affirmed the judgment of the trial court.

MOYER, C.J., and WRIGHT, J., concur in the foregoing dissenting opinion.

---

[9] *Scholl* and *Horn* are mischaracterized by the majority's implication that they are the first holdings as "courts around the country proceeded to make decisions * * *." The procession has gone a great deal further than the majority is willing to confess.

The majority cites three other cases which have "dealt with the subject, albeit in *dicta*." In each of these cases, the facts indicate that no *common-law* accord and satisfaction existed because the claims were not disputed. See *Majestic Bldg. Material Corp.* v. *Gateway Plumbing, Inc.* (Mo. App. 1985), 694 S.W. 2d 762, 764 ("* * * Gateway's check was partial payment of an undisputed and liquidated claim."); *Hanna* v. *Perkins* (N.Y. Cty. Ct. 1965), 2 UCC Rep. Serv. 1044, 1045 ("In the instant case, defendant does not dispute plaintiff's claim * * *."); *Baillie Lumber Co.* v. *Kincaid Carolina Corp.* (1969), 4 N.C. App. 342, 351, 167 S.E. 2d 85, 91 ("In the present case the account of Baillie for the lumber sold and delivered by Kincaid was both liquidated and undisputed."). Any discussion of the effect of UCC 1-207 on the doctrine of accord and satisfaction in these cases is superfluous because the elements of the doctrine were never present to begin with.