## Polen v. Prines
*[Cite as 7 AOA 494]*

*Case No. 89-L-14-165*
*Lake County, (11th)*
*Decided September 28, 1990*

*Albert B. Polen, pro se, 38052 Euclid Avenue, Suite 200, Willoughby, Ohio 44094, for Plaintiff-Appellant.*

*Kenneth D. Deyo, 27801 Euclid Avenue, Suite 500, Euclid, Ohio 44132, for Defendant-Appellee.*

MAHONEY, J.

Appellant, attorney Albert B. Polen, is a sole practitioner with his office in Willoughby, Ohio. On April 18, 1983, appellee, Laura Marie Prines, met with appellant to discuss the termination of her marriage. The topic of fees was raised and discussed by the parties. Exactly what the arrangement would be is at the center of the present dispute between the parties. Both parties agree, however, that $500 was the figure quoted as a minimum fee for appellant to handle appellee's dissolution. Appellant informed appellee that a legal clinic would be less expensive, and he instructed her to think it over for a week before making a decision. One week later, appellee retained the services of appellant.

On June 7, 1903, appellee sent a check to appellant in the amount of $300 which was marked "retainer fee."

Subsequently, the parties' verbal agreement was summarized in writing. On July 25, 1983, appellant sent appellee a letter wherein the terms of their fee arrangement were set forth. Appellee signed the letter, signifying her agreement to the terms, and returned it to appellant on July 28, 1983. The letter provided, in pertinent part:

"***

"Because of the nature of the matter, and because of the possibility of the occurrence of unpredictable and unforeseen circumstances, I explained it to you that I am not in a position to quote you an absolutely specific fee for my professional services.

"This is particularly true in a situation such as yours, even though we are attempting to have an amicable Dissolution, but which is essentially adversary in nature. Therefore, we must be prepared for possible disputes which may arise during the course of this action.

"We have discussed that should your case be uncontested in a sense that no serious disputes are raised, my minimum fee would be $500.00. That would include conferences with you, the preparation and filing of the Dissolution documents including preparation of the Separation Agreement, Court attendance for the

Dissolution Hearing and preparation and filing of the final Judgment Entry. This fee assumes that there will be no extensive negotiations, and that no problems with property, or its division, will be involved. That fee would be the minimum charge in the event of a reconciliation between you and Matt.

"We further discussed that should the case become more Involved, you will understand that my fee must be governed accordingly. I told you that in the event the matter became contested or a non-default action, that my minimum fee would be $800.00. Any charges over and above the minimum fee would be at $80.00 per hour. Each hour is based upon actual work in your particular case, and you have my assurance that I shall minimize travel time and expenses and courthouse time whenever I am able.

"*** "

Appellant continued to work on appellee's dissolution, but experienced some difficulties along the way. The difficulties centered on contacting appellee's husband and getting him to agree to allow his wife to have custody of their child. On September 21, 1983, appellee made a second payment in the amount of $150 towards appellant's services. On October 22, 1983, appellant received a third check from appellee in the amount of $125. It was marked "paid in full."

Immediately after the dissolution hearing was held on October 25, 1983, appellant informed appellee that approximately $1,900 in fees had accumulated up until the hearing that day and there would be more because of the hearing. Appellee was surprised that the amount due was as high as it was. She made an appointment with appellant to close-out her case and discuss his fee, but she later rescheduled the appointment. She subsequently failed to show up for her appointment.

Appellant proceeded to send thirteen statements to appellee between January 1984 and August 1985, requesting payment of $1,636.13. Appellee failed to respond, prompting appellant to file suit in Willoughby Municipal Court.

Following a two-day trial, the referee decided that appellant was entitled to the reasonable value of his services which the referee set at $1,000. The referee further found that there was no accord and satisfaction between the parties because at the time appellant cashed the check marked "paid in full," he did not have knowledge that a dispute existed regarding the fees. There was no objection made to the referee's report by either party.

The trial court reviewed the referee's report and made its own determination that there was an accord and satisfaction between the parties because appellant accepted the final payment with a clear restriction on the check. The trial court rendered judgment in favor of appellee. From that decision, appellant timely filed a notice of appeal, setting forth the following as error:

"1. The trial court erred to the prejudice of plaintiff in ruling that there was an accord and satisfaction between the parties.

"2. The trial court prejudicially reached a conclusion different from that in its referee's report.

"3. The trial court erred in making its independent judgment to the prejudice of plaintiff-appellant, and abused its discretion by not reviewing the audio tapes made by its trial referee where there was no necessity for transcribing them.

"4. The judgment is against the manifest weight of the evidence."

In the first assignment of error, appellant contends that the trial court erred in determining that there was an accord and satisfaction between the parties.

Until recently, the law in Ohio has been that an accord and satisfaction is accomplished when a creditor accepts and deposits a check which a debtor offers as full payment for an unliquidated or disputed claim. *Platt v. Penetryn System, Inc.* (1949), 151 Ohio St. 451; *Seeds Grain & Hay Co. v. Conger* (1910), 83 Ohio St. 169. The creditor had the choice of accepting the amount tendered as full payment or rejecting it entirely and pursuing the full amount.

In the case *sub judice,* appellant asserts that there was no dispute over the amount owed. This assertion is not supported by the evidence. It is clear that appellee believed that the fee for her dissolution was $500 plus costs. Conversely, appellant believed that appellee owed him an additional $1,636.13. Appellant deposited the check marked "paid in full," knowing that appellee did not intend to pay anything more. That is what the phrase "paid in full" indicates.

In a recent decision, the Ohio Supreme Court overturned the longstanding rule in Ohio that prohibited a creditor from seeking further payment from a debtor once a "payment in full" check was accepted. In *AFC Interiors v. DiCello* (1989), 46 Ohio St. 3d 1, the court held that R.C. 1301.13 supersedes the common-law doc-

trine of accord and satisfaction in situations involving a "payment in full" check. *Id.* at 5. R.C. 1301.13 provides:

"\*\*\*

"A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice', 'under protest', or the like are sufficient." The Ohio Supreme Court went on to hold:

"\*\*\* that pursuant to R.C. 1301.13, where a debtor tenders a check to a creditor as payment in full for less than the amount alleged to be owed on the debt, the creditor may accept the check as partial payment on the debt so long as the creditor explicitly reserves all rights by endorsing the check 'under protest' or any legend sufficient to apprise the debtor that the check is not accepted as full payment on the debt. In so doing, the creditor does not thereby prejudice any rights reserved on the balance alleged to be due.

"Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion." *Id.* at 5-6.

Although the *AFC Interiors* decision was released after the relevant facts in the present case occurred, it is applicable to the instant cause. The general rule is that a decision of the Ohio Supreme Court overruling a former decision is retrospective in its operation absent language to the contrary within the opinion itself. *Peerless Electric Co. v. Bowers* (1955), 164 Ohio St. 209; *Obral v. Fairview General Hospital* (1983), 13 Ohio App. 3d 57. There is no such language in *AFC Interiors.*

It is clear that, in order to take advantage of the limited exception carved out by the *AFC Interiors* decision, the creditor must explicitly reserve his or her rights by endorsing the check "under protest" or in some similar fashion.

In the present case, appellant did not expressly reserve his rights. There was no indication on the check that apprised appellee that it was not accepted by appellant as full payment on the debt.

Based on the foregoing reasons, the trial court correctly determined that there was an accord and satisfaction between the parties.

Appellant's first assignment of error is not well taken.

Appellant's second and third assignments of error will be addressed together because both involve the trial court's review of the referee's report. In the second assignment of error, appellant claims the trial court erred in reaching a conclusion different from that recommended by the referee. In the third assignment of error, appellant argues that the trial court abused its discretion in not reviewing the audio tapes made during the trial heard by the referee.

Pursuant to Civ. R. 53, a court that is presented with a referee's report is required to make an independent analysis of the issues and apply appropriate rules of law in reaching its judgment. Even if no objections are filed, the trial court must critically review and verify to its own satisfaction the correctness of such a report. *Normandy Place Assoc. v. Beyer* (1982), 2 Ohio St. 3d 102, 105; *Garcia v. Tillack* (1983), 9 Ohio App. 3d 222.

Appellant has failed to show that the trial court did not follow proper procedure. It is clear that the trial court has the discretion to agree or disagree with the contents of the referee's report. Following an independent analysis of the facts and issues, the trial court may adopt, modify, or reject the referee's report. In the instant cause, the trial court reached different conclusions than the referee; but those conclusions were not unreasonable, arbitrary or unconscionable and, thus, the trial court did not abuse its discretion. *Blakemore v. Blakemore* (1983), 5 Ohio St. 3d 217.

Additionally, there is no evidence concerning the audio tapes made of the trial. We are unable to determine whether the trial court reviewed said tapes or a transcript thereof. However, there is no requirement concerning the trial court's treatment of audio tapes in this situation. As long as the trial court independently analyzed the issues in the referee's report, there is no error. There is no evidence that the trial court did not independently analyze the issues contained in the report.

Appellant's second and third assignments of error are without merit.

In the fourth assignment of error, appellant claims the trial court's judgment is against the manifest weight of the evidence. In setting the standard of review based on manifest weight, the Ohio Supreme Court has stated:

"\*\*\* if the judgment of the trial court is supported by some competent, credible evidence, it will not be reversed by a reviewing court as being against the manifest weight of the evi-

dence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279 (8 O.O. 3d 261); *State, ex rel. Shady Acres Nursing Home, Inc., supra.* \*\*\* " *Kinney v. Mathias* (1984), 10 Ohio St. 3d 72, 73-74.

Appellant argues that the contractual agreement between the parties was clear and unambiguous; the minimum charge would be $500 with an hourly rate of $80 per hour over and above that. The trial court found that there was some ambiguity in the contract, and that such ambiguity must be resolved against the party that drafted the contract. The trial court concluded that under the agreement, a flat fee of $500 was to be paid to appellant in exchange for his representation of appellee in an uncontested dissolution proceeding.

More importantly, the court determined that appellant's acceptance of appellee's final payment, which included a clear restrictive endorsement, qualified as an accord and satisfaction between the parties. For the reasons discussed in the first assignment of error, we have previously determined that the trial court did not err in that respect. Since there was an accord and satisfaction, the ambiguity of the contract, or lack thereof, is irrelevant to the present case. The accord and satisfaction that occurred was the equivalent of the parties forming a new contract at that point in time. Any prior contracts were null and void.

For the foregoing reasons, whether the contract in this case was ambiguous or not became irrelevant when the trial court concluded that there was an accord and satisfaction between the parties. Therefore, the trial court's judgment is not against the manifest weight of the evidence.

Appellant's fourth assignment of error is without merit. For the reasons set forth herein, the judgment of the trial court is affirmed.

CHRISTLEY, P.J., and PRYATEL, J., concur.

PRYATEL, J., Ret., Eighth Appellate District, sitting by assignment.